**FILED**

JUN 1 5 2009



CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
## WESTERN DIVISION

| | |
|---|---|
| ARRON MARSTON and JUDY MARSTON, ) | |
| ) | |
| Plaintiffs, ) | Case No. C1V09-5055 |
| ) | |
| v. ) | |
| ) | **COMPLAINT** |
| UNITED STATES OF AMERICA; ) | |
| UNITED STATES FOREST SERVICE; ) | |
| THOMAS J. VILSACK, ) | |
| Secretary, United States Department of Agriculture; ) | |
| ABIGAIL R. KIMBELL, ) | |
| Chief, United States Forest Service; ) | |
| CRAIG BOBZIEN, ) | |
| Forest Supervisor, Black Hills National Forest; and ) | |
| LYNN KOLUND, ) | |
| District Ranger, Hell Canyon Ranger District, ) | |
| Black Hills National Forest, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiffs Arron Marston and Judy Marston, by and through their undersigned attorneys,

hereby file this Complaint against Defendants and allege as follows:

### NATURE OF THE CLAIMS

1.     The claims alleged herein arise from official actions authorized and/or committed

by employees of the United States Forest Service ("Forest Service") that intentionally, tortiously,

negligently, and unlawfully rendered the Marstons' unpatented mining claims unusable.

### JURISDICTION

2.     The Martsons' first six claims for relief are brought against only Defendant

United States of America.  This Court has jurisdiction over these claims pursuant to the Federal

Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80.  The Marstons seek compensation for injuries

to their real property caused by the intentional, tortious, and negligent acts of:  (a) an employee

(or employees) of the Forest Service; and/or (b) persons who were specifically authorized by an

employee (or employees) of the Forest Service.  At all times, the Forest Service employee(s)

was/were acting within the scope of his/her/their offices and employment, under circumstances

where the United States, if a private person, would be liable in accordance with the laws of the

State of South Dakota.  The Marstons satisfied the requirements of 28 U.S.C. § 2675 by filing a

claim with the appropriate federal agency, the United States Forest Service, on July 30, 2008.[1]

More than six months has elapsed since the Marstons filed that claim and no response from the

Forest Service has been received.

      3.      The Martsons' seventh claim for relief, which is pled in the alternative, is brought

against the remaining Defendants.  This Court has jurisdiction over this claims pursuant to

28 U.S.C. § 1331 because the matter in controversy arises under the laws of the United States,

including, but not limited to, (a) the Administrative Procedure Act ("APA"), 5 U.S.C. § 551,

*et seq.*; (b) the General Mining Law of 1872, 30 U.S.C. § 21, *et seq.*; and (c) the Surface

Resources Act, 30 U.S.C. § 612.

### VENUE

      4.      Venue rests properly in this Court pursuant to 28 U.S.C. § 1402(c) and 28 U.S.C.

§ 1391(e) because the United States of America is a Defendant, the real property that is the

subject of this action is situated in this judicial district, and a substantial part of the events giving

rise to the claim occurred in this judicial district.

---

[1] A copy of the claim filed with the Forest Service is attached hereto as Exhibit 1.

5.     Assignment is proper in this division because the real property at issue is located in Custer County, South Dakota.

## PARTIES

6.     Plaintiffs Arron Marston and Judy Marston, husband and wife, are citizens of the United States and are residents of Fall River County, South Dakota.

7.     Defendant United States of America is liable for the tortious actions of Forest Service employee(s), acting within the scope of his/her/their employment, for which liability would exist under South Dakota law if the United States were a private person.

8.     Defendant United States Forest Service is an agency within the United States Department of Agriculture.

9.     Defendant Thomas J. Vilsack is Secretary of the United States Department of Agriculture. Defendant Vilsack is responsible for administering the National Forest System. Defendant Vilsack is sued in his official capacity.

10.    Defendant Abigail R. Kimbell is Chief of the United States Forest Service. Defendant Kimbell is responsible for administering the National Forest System, subject to the supervision of Defendant Vilsack. Defendant Kimbell is sued in her official capacity.

11.    Defendant Craig Bobzien is Forest Supervisor of the Black Hills National Forest. He is responsible for the management of Black Hills National Forest, subject to the supervision of Defendants Kimbell and Vilsack. Defendant Bobzien is sued in his official capacity.

12.    Defendant Lynn Kolund is District Ranger of the Hell Canyon Ranger District within the Black Hills National Forest. Defendant Kolund manages the Hell Canyon Ranger District, subject to the supervision to Defendants Bobzien, Kimbell, and Vilsack. Defendant Kolund is sued in his official capacity.

3

## **BACKGROUND**

13.     Congress has long encouraged citizens of the United States to discover and

develop the Nation's mineral resources.  For example, in passing the General Mining Law of

1872, 30 U.S.C. § 22, *et seq*. ("General Mining Law"), Congress granted all citizens a statutory

right to enter upon federal lands for the purposes of locating and maintaining mining claims for

mineral prospecting, exploration, development, extraction, and other uses reasonably incident

thereto.  Specifically:

> [A]ll valuable mineral deposits in lands belonging to the United States, both
> surveyed and unsurveyed, shall be free and open to exploration and purchase, and
> the lands in which they are found to occupation and purchase, by citizens of the
> United States . . . .

30 U.S.C. § 22.

14.     This unilateral offer by Congress becomes a vested property right upon

"discovery" and "location."  30 U.S.C. § 23 ("[N]o location of a mining claim shall be made

until the *discovery* of the vein or lode within the limits of the claim located."  (emphasis added));

*Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 336 (1963) (an unpatented mining claim is

"valid against the United States if there has been a *discovery of mineral* within the limits of the

claim" (emphasis added)).  Thus, a person who discovers a valuable deposit and satisfies the

required procedures for establishing "location" becomes the owner of an unpatented mining

claim.  30 U.S.C. §§ 22, 23, 26.

15.     Importantly, an unpatented mining claim:

> [I]s property in the fullest sense of that term; and may be sold, transferred,
> mortgaged, and inherited without infringing any right or title of the United States.
> The right of the owner is taxable by the state; and is real property, subject to the
> lien of a judgment recovered against the owner in a state or territorial court.  The
> owner is not required to purchase the claim or secure patent from the United
> States; but, so long as he complies with the provisions of the mining laws, his
> possessory right, for all practical purposes of ownership, is as good as though
> secured by patent.

*Wilbur v. U.S. ex rel. Krushnic*, 280 U.S. 306, 317-18 (1930).

16.     As originally enacted, the General Mining Law granted owners of unpatented

mining claims the right to exclusive possession and use of the claim for mining purposes and the

concomitant right to extract the minerals therefrom:

> The locators of all mining locations . . . *shall have the exclusive right of*
> *possession and enjoyment of all the surface included within the lines of their*
> *locations*, and of all veins, lodes, and ledges throughout their entire depth, the top
> or apex of which lies inside of such surface lines extended downward vertically,
> although such veins, lodes, or ledges may so far depart from a perpendicular in
> their course downward as to extend outside the vertical side lines of such surface
> locations.

30 U.S.C. § 26 (emphasis added).

17.     This exclusive right of possession and use allows the owner of an unpatented

mining claim to exclude all others, even the federal government:

> [The General Mining Law] gives to the owner of a valid lode location the
> exclusive right of possession and enjoyment of all the surface included within the
> lines of the location. *That exclusive right of possession forbids any trespass.* No
> one, without his consent, or, at least, his acquiescence, can rightfully enter upon
> the premises or disturb its surface by sinking shafts or otherwise. It was the
> judgment of Congress that, in order to secure the fullest working of the mine, and
> the complete development of the mineral property, the owner thereof should have
> the undisturbed possession of not less than a specified amount of surface. That
> exclusive right of possession is as much the property of the locator as the vein or
> lode by him discovered and located.

*Clipper Mining Co. v. Eli Mining & Land Co.*, 194 U.S. 220, 226-27 (1904) (emphasis added).

18.     Moreover, Congress explicitly prohibited the federal government from interfering

with the owner's reasonable use of an unpatented mining claim for prospecting, mining, and

processing. *See* 16 U.S.C. § 478 (no rule or regulation shall "prohibit any person from entering

upon [the National Forests] for all proper and lawful purposes, including that of prospecting,

locating, and *developing the mineral resources thereof*" (emphasis added)); *U.S. v. Shumway*,

199 F.3d 1093, 1106-07 (9th Cir. 1999) (Forest Service lacks authority "to encroach on

legitimate uses of" unpatented mining claims) (citing *United States v. Weiss*, 642 F.2d 296, 299

(9th Cir. 1981)).

19.     In 1955, Congress passed what is commonly referred to as the "Surface

Resources Act," 30 U.S.C. § 612, which provides, *inter alia*;

> Rights under any mining claim hereafter located under the mining laws of the
> United States shall be subject, prior to issuance of patent therefor, to the right of
> the United States to manage and dispose of the vegetative surface resources
> thereof and to manage other surface resources thereof (except mineral deposits
> subject to location under the mining laws of the United States).  Any such mining
> claim shall also be subject, prior to issuance of patent therefor, to the right of the
> United States, its permittees, and licensees, to use so much of the surface thereof
> as may be necessary for such purposes or for access to adjacent land:  *Provided,*
> *however*, That any use of the surface of any such mining claim by the United
> States, its permittees or licensees, shall be such as not to endanger or materially
> interfere with prospecting, mining or processing operations or uses reasonably
> incident thereto.

*Id.* (emphasis in original).

20.     The language of 30 U.S.C. § 612 was crafted to provide for some multiple

uses of the surface of unpatented mining claims.  It was not intended, however, that these

uses would "interfere with the historical relationship between the possessor of a mining

claim and the United States."  *United States v. Curtis-Nevada Mines, Inc.*, 611 F.2d 1277,

1280-81 (9th Cir. 1980).  Indeed:

> This language, carefully developed, emphasizes the [Committee on Interior and
> Insular Affairs'] insistence that this legislation not have the effect of modifying
> long-standing essential rights springing from location of a mining claim.
> Dominant and primary use of the locations hereafter made, as in the past, would
> be vested first in the locator; the United States would be authorized to manage and
> dispose of surface resources, or to use the surface for access to adjacent lands, so
> long as and to the extent that these activities do not endanger or materially
> interfere with mining, or related operations or activities on the mining claim.

H.R. Rep. No. 84-730, at 10 (1955), *reprinted in* 1955 U.S.C.C.A.N 2474, 2483.

21.     It was in this legal context that Amos V. Burnside, in or around 1975, properly

located three valuable unpatented mining claims in the Black Hills National Forest in Custer

County, South Dakota, Section 26, Township 3 South, Range 3 East. These claims are commonly referred to as D&R #1, D&R #2, and D&R #3. The Bureau of Land Management ("BLM") assigned the serial numbers MMC 2542, MMC 2543, and MMC 2544 to D&R #1, D&R #2, and D&R #3, respectively.

22.     Since their location, D&R #1, D&R #2, and D&R #3 have been properly maintained and developed, pursuant to federal statutes and regulations.

23.     For example, a 90-foot-deep vertical shaft was developed on D&R #2 that intersected a substantial quartz vein. At the bottom of this shaft, along the quartz vein, a 5-foot by 7-foot horizontal drift was excavated for a length of 110 feet. Samples taken from the midsection of the shaft assayed at more than 200 ounces of gold per ton, and samples taken from the bottom of the shaft assayed at almost 600 ounces of gold per ton.

24.     In addition, two significant trenches, the largest of which is approximately 200 feet long and 8 feet deep, were excavated on D&R #2 to expose near-surface veins. Samples taken from these trenches assayed at more than 300 ounces of gold per ton.

25.     On D&R #3, a 7-foot by 9-foot tunnel spanning 180 feet was excavated. This tunnel is approximately 1,200 feet south of and 200 feet lower in elevation than the collar of the shaft on D&R #2.

26.     By quit claim deed, executed and recorded on August 8, 2000, Mr. Burnside's personal representative conveyed D&R #1, D&R #2, and D&R #3 to the Marstons.

27.     Since acquiring the claims, the Marstons have properly maintained the claims in accordance with all applicable laws and regulations. As a result, the BLM recognizes the Marstons as the owners of the claims.

7

## **FOREST SERVICE ACTIONS REGARDING THE MINING CLAIMS**

28.     On or about May 10, 2005, Mr. Marston received a letter dated May 9, 2005, from Michael Lloyd, then-District Ranger of the Hell Canyon Ranger District, Black Hills National Forest, characterizing the Marstons' mines as "abandoned" and stating that the Forest Service was "contemplating installation" of a gate on the D&R #3 tunnel and "contemplating constructing" a purported "safety closure" on the D&R #2 shaft. The letter requested that Mr. Marston speak to Mark Nelson, district mineral specialist, regarding these proposed actions, and provided a phone number at which Mr. Nelson purportedly could be reached.

29.     At approximately 8:00 a.m., on the day immediately following his receipt of the May 9, 2005, letter, Mr. Marston called the phone number provided therein. Mr. Marston was informed that Mr. Nelson had not yet arrived at work and, thus, was unavailable to speak with Mr. Marston.

30.     Twenty minutes later, at approximately 8:20 a.m., Mr. Marston called again, in another attempt to reach Mr. Nelson. Forest Service employee Laura Burns answered Mr. Marston's telephone call.

31.     During this telephone call, Mr. Marston advised Ms. Burns that D&R #1, D&R #2, and D&R #3 were not abandoned, that they were being properly maintained, and that he and Mrs. Marston spent a substantial portion of time each summer working on the claims. Mr. Marston also vehemently objected to the Forest Service's plans to install a gate on the D&R #3 tunnel and a purported "safety closure" on the D&R #2 shaft.

32.     During this telephone call, Ms. Burns expressed her appreciation for Mr. Marston's call and agreed that the D&R mining claims were, in fact, active, and not abandoned. Ms. Burns assured Mr. Marston that installation of a gate on the D&R #3 tunnel and a purported "safety closure" on the D&R #2 shaft would not occur.

8

33.     Despite Ms. Burns' assurances, on or about August 4, 2005, then-District Ranger Michael Lloyd, an employee of the Forest Service acting within the scope of his employment, purportedly issued a "Decision Memo" in which he decided to have bat gates installed on the D&R #3 tunnel and the D&R #2 shaft.

34.     This Decision Memo constitutes a final agency action.

35.     The Marstons never received a copy of this Decision Memo, nor were they informed of its contents, until after the Forest Service destroyed the workings on the D&R claims.

36.     When the Marstons returned to the D&R claims in the summer of 2006, the claims appeared to be in the same physical condition as when the Marstons last visited the claims in 2005.  This physical observation confirmed the assurances that Ms. Burns had made to Mr. Marston on or about May 11, 2005.

37.     In or around August 2006, after spending a substantial portion of the summer working on the mines, the Marstons left the D&R claims for the season.

38.     In or around August 2006, in total disregard for the Marstons' valuable property rights, and without the Marstons' knowledge or consent, a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, bulldozed the trenches and shaft on D&R #2, rendering the drift on D&R #2 inaccessible.  Due to these actions, the shaft, drift, and trenches on D&R #2 were effectively destroyed.

39.     Moreover, in or around October 2006, in total disregard for the Marstons' valuable property rights, and without the Marstons' knowledge or consent, a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees)

of the Forest Service, acting at all times within the scope of his/her/their employment or agency, installed a locked bat gate over the entrance to the tunnel on D&R #3.

40.     The bat gate, even when unlocked and open, is not large enough for a person to enter the tunnel and conduct mining activities therein. As a result, the gate materially interferes with the Marstons' ability to conduct mining activities on D&R #3.

41.     The destruction of the Marstons' mining claims resulting from the installation of a locked bat gate over the entrance to the D&R #3 tunnel and the bulldozing of the trenches and shaft on D&R #2 constitutes a final agency action.

42.     The Marstons did not discover the destruction of their workings on D&R #2 and D&R #3 until they returned to the claims in or around May of 2007.

43.     Because of the rights granted to owners of unpatented mining claims under the General Mining Law and the Surface Resources Act, Forest Service employees could not, as a matter of discretion and without the Marstons' consent, destroy the Marstons' mine workings on D&R #2 and D&R #3 nor authorize that destruction.

44.     The Marstons did not consent to the destruction of the trenches, shaft, or drift on D&R # 2 or the installation of a locked bat gate on D&R #3.

45.     These actions caused actual damage to the Marstons' property for which the Marstons seek compensation.

46.     The Marstons have satisfied all the conditions precedent for bringing the following claims.

47.     None of the exceptions in 28 U.S.C. § 2680 applies to the Forest Service's above-described actions.

## FIRST CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Trespass)

48.     Plaintiffs hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

49.     Under South Dakota law, a trespass occurs when one, intentionally and without a consent or privilege: (a) enters the land of another or causes a thing or third person to enter the land of another; (b) remains on the land of another; or (c) fails to remove a thing that he is under a duty to remove. *Benson v. South Dakota*, 2006 SD 8, ¶ 74, 710 N.W.2d 131 (2006); *South Dakota v. Rumpca*, 2002 SD 124 ¶ 10 n.2, 652 N.W.2d 795 (2002) (citing Restatement (Second) of Torts § 158 (1965)).

50.     Even if a person has consent or a privilege to enter the land of another, he is liable for unreasonable and tortious acts that exceed the scope of his consent or privilege. *See Wallahan v. Black Hills Elec. Co-op, Inc.*, 523 N.W.2d 417, 421-23 (S.D. 1994); Restatement (Second) of Torts § 214 (1965); *Id.* § 892A(4) (1979).

51.     Under South Dakota law, the proper remedy for such a trespass is the reasonable cost of restoration. *Denke v. Mamola*, 437 N.W.2d 205, 208 (S.D. 1989).

52.     In or around August 2006, a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, entered the Marstons' property and obliterated the trenches and the shaft on D&R #2, which rendered the drift inaccessible and effectively destroyed.

53.     The destruction of the trenches, shaft, and drift materially interferes with the Marstons' ability to engage in valuable mining operations on D&R #2. Indeed, in their current

11

state, the trenches can no longer be used, the shaft can no longer be mined, and the drift can no longer be accessed.

54. Even if an employee (or employees) and/or specifically authorized agent (or agents) of the Forest Service had the right to enter upon the surface of D&R #2 to manage surface resources, these employee(s) and/or agent(s) of the Forest Service did not have the right to destroy the valuable mine workings on that claim.

55. Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the valuable mine workings on D&R #2, the United States, if it were a private person, would be liable in accordance with the laws of the State of South Dakota. Thus, the United States is liable for monetary damages in the amount that it would cost to restore the destroyed shaft, drift, and trenches to their previously existing working condition.

56. Additionally, in or around October 2006, an employee (or employee) and/or specifically authorized agent (or agents) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, entered the Marstons' property and installed a bat gate at the entrance to the tunnel on D&R #3.

57. Even if an employee (or employees) and/or agent (or agents) of the Forest Service had the right to enter upon the surface of D&R #3 to manage surface resources, he/she/they did not have the right to install a bat gate at the entrance to the tunnel on D&R #3.

58. Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, placed a bat

12

gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person,

would be liable in accordance with the laws of the State of South Dakota. Thus, the United

States is liable for monetary damages in the amount that it would cost to restore the tunnel to its

previously existing working condition.

## SECOND CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Negligence Per Se for Violation of State Trespass Statute)

59.     Plaintiffs hereby reallege and incorporate the allegations in the preceding

paragraphs as if fully set forth herein.

60.     In South Dakota, the standard for negligence per se is as follows:

The violation of a statute or ordinance, designed for the benefit of individuals, is
of itself sufficient to prove such a breach of duty as will sustain an action for
negligence brought by a person within the protected class if other elements of
negligence concur. The statute or ordinance becomes the standard of care or the
rule of the ordinarily careful and prudent person.

*Hendrix v. Schulte*, 2007 SD 73, ¶ 17, 736 N.W.2d 845 (2007).

61.     Pursuant to South Dakota statute,

Any person who, knowing that he or she is not privileged to do so, enters or
remains in any place where notice against trespass is given by: (1) Actual
communication to the person who subsequently commits the trespass; [or] (2)
Posting in a manner reasonably likely to come to the attention of trespassers . . . is
guilty of a Class 2 misdemeanor.

SDCL § 22-35-6.

62.     Prior to the destruction of the shaft, drift, and trenches and the installation of the

locked bat gate, the Marstons verbally communicated by telephone to the Forest Service that

D&R #2 and D&R #3 were active mines and were not to be disturbed. Thus, there was "actual

communication" of the notice of trespass.

63.     In addition, prior to the destruction of the shaft, drift, and trenches and the

installation of the locked gate, the Marstons posted notices that were plain and obvious to

13

potential trespassers on a rock at the entrance to the tunnel on D&R #3 and on a tree on D&R #2 stating that the mines were active and were not to be disturbed.

64.     A Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, did not act in accordance with SDCL § 22-35-6 when he/she/they entered the Marstons' property and directly and proximately caused the destruction of the trenches, shaft, and drift on D&R #2 and the installation of the locked bat gate on D&R #3.

65.     SDCL § 22-35-6 was intended to protect private property owners, such as the Marstons.

66.     Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the shaft, drift, and trenches on D&R #2 and placed the bat gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person, would be liable in accordance with the laws of the State of South Dakota.  Thus, the United States is liable for monetary damages in the amount that it would cost to restore the tunnel to its previously existing working condition.

### THIRD CLAIM FOR RELIEF
**(Federal Tort Claims Act)**
**(Private Nuisance)**

67.     Plaintiffs hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

68.     In South Dakota, a "claim for nuisance may be brought under statutory or

common law nuisance theories." *Atkinson v. City of Pierre*, 2005 SD 114, ¶ 12, 706 N.W.2d 791

(2005) (internal citations omitted).

69.     Under South Dakota statute, a private nuisance is defined as an unlawful act, not

committed against the public at large, that "[i]n any way renders other persons insecure in . . . the

use of property." SDCL §§ 21-10-1, 21-10-3.

70.     Under South Dakota common law:

> [O]ne is subject to liability for a private nuisance if, but only if, his conduct is a
> legal cause of an invasion of another's interest in the private use and enjoyment of
> land, and the invasion is either (a) intentional and unreasonable, or (b)
> unintentional and otherwise actionable under the rules controlling liability for
> negligent or reckless conduct, or for abnormally dangerous conditions or
> activities.

*Atkinson*, 2005 SD 114, ¶ 13, 706 N.W.2d 791 (quoting Restatement (Second) of Torts § 822

(1979)).

71.     By obliterating the trenches and the shaft and drift on D&R #2 and by installing

the locked gate on D&R #3, an employee (or employees) and/or specifically authorized agent (or

agents) of the Forest Service, acting at all times within the scope of his/her/their employment or

agency, intentionally and unreasonably disturbed the Marstons' interest in the private use and

enjoyment of their land.  Indeed, the Marstons' ability to engage in mining activities on D&R #2

and D&R #3 has been completely stymied by these actions.

72.     Because a Forest Service employee (or employees) and/or persons specifically

authorized by an employee (or employees) of the Forest Service, acting at all times within the

scope of his/her/their employment or agency, intentionally, and without permission destroyed the

shaft, drift, and trenches on D&R #2 and placed the bat gate on the entrance to the tunnel on

D&R #3, the United States, if it were a private person, would be liable in accordance with the

laws of the State of South Dakota. Thus, the United States is liable for monetary damages in the amount that it would cost to restore the tunnel to its previously existing working condition.

## FOURTH CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Negligence Per Se for Violation of State Nuisance Statutes)

73.    Plaintiffs hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

74.    A Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, did not act in accordance with South Dakota's nuisance statutes, SDCL §§ 21-10-1, 21-10-3, when he/she/they directly and proximately caused the destruction of the trenches and the shaft and drift on D&R #2 and the installation of the locked gate on D&R #3.

75.    South Dakota Codified Laws §§ 21-10-1 and 21-10-3 are intended to protect private property owners such as the Marstons.

76.    Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the shaft, drift, and trenches on D&R #2, and placed the bat gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person, would be liable in accordance with the laws of the State of South Dakota. Thus, the United States is liable for monetary damages in the amount that it would cost to restore the tunnel to its previously existing working condition.

## FIFTH CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Negligence Per Se for Violation of 30 U.S.C. § 612)

77.     Plaintiffs hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

78.     Pursuant to the Surface Resources Act, "any use of the surface of any . . . mining claim by the United States, its permittees or licensees, shall be such as not to endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto." 30 U.S.C. § 612.

79.     This statute, by its very terms, is intended to protect people, such as the Marstons, who are engaged in prospecting, mining, or processing operations.

80.     The willful and unexcused violations of 30 U.S.C. § 612 by an employee (or employees) or specifically authorized agent (or agents) of the Forest Service, acting within the scope of his/her/their employment or agency, directly and proximately caused the damages to the Marstons' claims.

81.     Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the shaft, drift, and trenches on D&R #2 and placed the bat gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person, would be liable in accordance with the laws of the State of South Dakota. Thus, the United States is liable for monetary damages in the amount that it would cost to restore the tunnel to its previously existing working condition.

## SIXTH CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Negligence)

82.     Plaintiffs hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

83.     "Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury." *Zarecky v. Thompson*, 2001 SD 121, ¶ 17, 634 N.W.2d 311 (2001). For proximate cause to exist, "the harm suffered must be found to be a foreseeable consequence of the act complained of." *Id.* (citing *Williams v. United States*, 450 F. Supp. 1040, 1046 (D.S.D. 1978) (other internal citations and quotations omitted)).

84.     Pursuant to SDCL §§ 21-10-1, 21-10-3, and 22-35-6, 30 U.S.C. § 612, and South Dakota common law, Forest Service employees have a duty not to materially interfere with, damage, or destroy private property.

85.     This duty was breached when an employee (or employees) and/or specifically authorized agent (or agents) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, directly and proximately destroyed the trenches, shaft, and drift on D&R #2 and erected the bat gate on D&R #3, rendering the mines inoperable.

86.     Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the shaft, drift, and trenches on D&R #2 and placed the bat gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person, would be liable in accordance with the laws of the State of South Dakota. Thus, the United States is liable for monetary damages in the amount that it would cost to restore the tunnel to its previously existing working condition.

## SEVENTH CLAIM FOR RELIEF
### (Administrative Procedure Act)
### (Violation of the General Mining Law and 30 U.S.C. § 612)

87.     Plaintiffs hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

88.     On or about August 4, 2005, then-District Ranger Michael Lloyd, an employee of the Forest Service issued a "Decision Memo" in which he decided to have "bat gates" installed on the D&R #3 tunnel and the D&R #2 shaft.

89.     Based upon the Decision Memo, a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, destroyed the Marstons' mining claims.

90.     Both the Decision Memo and the destruction of the Marstons' mining claims were final agency actions.

91.     These final agency actions "materially interfere[d] with [the Marstons'] prospecting, mining, or processing operations," in violation of the General Mining Law and 30 U.S.C. § 612.  Moreover, these final agency actions tortiously interfered with the Marstons' property rights.

92.     These final agency actions were: (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (b) contrary to constitutional right, power, privilege, or immunity; (c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (d) without observance of procedure required by law; (e) unsupported by substantial evidence; and/or (f) unwarranted by the facts to the extent that the facts are subject to trial *de novo*.

19

93.     Pursuant to the APA, these final agency actions should be held unlawful and set aside, and Defendants, except the United States, should be ordered to restore D&R #2 and D&R #3 to their previously existing condition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Arron Marston and Judy Marston request the following relief:

1.     With regard to Defendant United States:

a.     That this Court declare that an employee (or employees) or specifically authorized agent (or agents) of the United States Forest Service committed acts of trespass, nuisance, and negligence and, therefore, the United States is subject to liability pursuant to the Federal Torts Claims Act; and

b.     That this Court award the Marstons compensatory damages in the amount of $400,185.46.

2.     In the alternative, with regard to Defendants Vilsack, Kimbell, Bobzien and Kolund:

a.     That this Court declare that the Decision Memo and the destruction of the Marstons' mining claims were final agency actions.

b.     That this Court declare that the Decision Memo and the destruction of the Marstons' mining claims were:  (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence; and/or (6)

20

unwarranted by the facts to the extent that the facts are subject to trial *de novo.*

    c.    That this Court hold unlawful the Decision Memo and the destruction of the Marstons' mining claims and order Defendants Vilsack, Kimbell, Bobzien, and Kolund to perform such work on the Marstons' mining claims as is necessary to restore those claims to the condition existing prior to their destruction

    3.    That this Court award the Marstons their costs, expenses, and attorneys' fees in accordance with law, including the Equal Access to Justice Act, 28 U.S.C. § 2412.

    4.    That this Court award the Marstons such further relief as is just and equitable.

DATED this _12th_ day of _June_, 2009.

        Respectfully Submitted by:

        Max S. Main, Esq., S.D. Bar No. 1084
        BENNETT, MAIN AND GUBBRUD, P.C.
        618 State Street
        Belle Fourche, South Dakota 57717
        Phone: (605) 892-2011
        Fax: (605) 892-4084
        max@bellelaw.com

        Joel M. Spector, Esq., *pro hac vice application pending*
        MOUNTAIN STATES LEGAL FOUNDATION
        2596 South Lewis Way
        Lakewood, Colorado 80227
        Phone: (303) 292-2021
        Fax: (303) 292-1980
        jspector@mountainstateslegal.com

        Attorneys for Plaintiffs Arron Marston and Judy Marston