# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
## WESTERN DIVISION

| | | |
|---|---|---|
| ARRON MARSTON and JUDY MARSTON, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 09-5055 |
| | ) | |
| v. | ) | |
| | ) | **FIRST AMENDED** |
| UNITED STATES OF AMERICA; | ) | **COMPLAINT** |
| UNITED STATES FOREST SERVICE; | ) | |
| THOMAS J. VILSACK, | ) | |
| Secretary, United States Department of Agriculture; | ) | |
| TOM TIDWELL, | ) | |
| Chief, United States Forest Service; | ) | |
| CRAIG BOBZIEN, | ) | |
| Forest Supervisor, Black Hills National Forest; and | ) | |
| LYNN KOLUND, | ) | |
| District Ranger, Hell Canyon Ranger District, | ) | |
| Black Hills National Forest, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiffs Arron Marston and Judy Marston, by and through their undersigned attorneys, hereby file this First Amended Complaint against Defendants and allege as follows:

## NATURE OF THE CLAIMS

1.       The claims alleged herein arise from official actions authorized and/or committed by employees of the United States Forest Service ("Forest Service") that intentionally, tortiously, negligently, and unlawfully destroyed the valuable mine workings on the Marstons' unpatented mining claims.

## JURISDICTION

2.       The Marstons' first six claims for relief are against only Defendant United States

of America.  The Marstons seek monetary damages for injuries to their real property caused by

the intentional, tortious, and negligent acts of:  (a) an employee (or employees) of the Forest

Service; and/or (b) persons who were specifically authorized by an employee (or employees) of

the Forest Service.  At all relevant times, the Forest Service employee(s) was/were acting within

the scope of his/her/their offices and employment, under circumstances where the United States,

if a private person, would be liable in accordance with the laws of the State of South Dakota.

This Court has jurisdiction over these claims pursuant to the Federal Tort Claims Act, 28 U.S.C.

§§ 1346(b), 2671–80.  The Marstons satisfied the requirements of 28 U.S.C. § 2675 by filing a

claim with the appropriate federal agency, the Forest Service, on July 30, 2008.[1]  More than six

months has elapsed since the Marstons filed that claim and no response from the Forest Service

has been received.

3.       The Marstons' seventh claim for relief is pled in the alternative against all

Defendants, except the United States (hereinafter collectively "Agency Defendants").  With this

claim, the Marstons are seeking declaratory, injunctive, and mandamus-type relief.  This Court

has jurisdiction over this claim pursuant to 28 U.S.C. § 1331 because the matter in controversy

arises under the laws of the United States, including, but not limited to, (a) the General Mining

Law of 1872, 30 U.S.C. § 21, *et seq.*; and (b) the Surface Resources Act, 30 U.S.C. § 612.  This

Court has the power to grant the requested relief under 5 U.S.C §§ 703 and 706, 28 U.S.C §

1361, and 28 U.S.C §§ 2201 and 2202.

---

[1] A copy of the claim filed with the Forest Service is attached hereto as Exhibit 1.

2

## VENUE

4.      Venue rests properly in this Court pursuant to 28 U.S.C. § 1402(c) and 28 U.S.C. § 1391(e) because the United States of America is a Defendant, the real property that is the subject of this action is situated in this judicial district, and a substantial part of the events giving rise to the claim occurred in this judicial district.

5.      Assignment is proper in this division because the real property at issue is located in Custer County, South Dakota.

## PARTIES

6.      Plaintiffs Arron Marston and Judy Marston, husband and wife, are citizens of the United States and are residents of Fall River County, South Dakota.

7.      Defendant United States of America is liable for the tortious actions of Forest Service employee(s), acting within the scope of his/her/their employment, for which liability would exist under South Dakota law if the United States were a private person.

8.      Defendant United States Forest Service is an agency within the United States Department of Agriculture.

9.      Defendant Thomas J. Vilsack is Secretary of the United States Department of Agriculture.  Defendant Vilsack is responsible for administering the National Forest System. Defendant Vilsack is sued in his official capacity.

10.      Defendant Tom Tidwell is Chief of the United States Forest Service.  Defendant Tidwell is responsible for administering the National Forest System, subject to the supervision of Defendant Vilsack.  Defendant Tidwell is sued in his official capacity.

11.      Defendant Craig Bobzien is Forest Supervisor of the Black Hills National Forest. He is responsible for the management of Black Hills National Forest, subject to the supervision of Defendants Tidwell and Vilsack.  Defendant Bobzien is sued in his official capacity.

3

12.     Defendant Lynn Kolund is District Ranger of the Hell Canyon Ranger District,

Black Hills National Forest.  Defendant Kolund manages the Hell Canyon Ranger District,

subject to the supervision to Defendants Bobzien, Tidwell, and Vilsack.  Defendant Kolund is

sued in his official capacity.

## BACKGROUND

13.     Congress has long encouraged citizens of the United States to discover and

develop the Nation's mineral resources.  For example, in passing the General Mining Law of

1872, 30 U.S.C. § 22, *et seq*. ("General Mining Law"), Congress declared:

> [A]ll valuable mineral deposits in lands belonging to the United States, both
> surveyed and unsurveyed, shall be free and open to exploration and purchase, and
> the lands in which they are found to occupation and purchase, by citizens of the
> United States . . . .

30 U.S.C. § 22.  This statutory provision grants all citizens a valid existing right to enter upon

federal lands open to mineral entry for the purposes of mineral prospecting, exploration,

development, extraction, processing, and other uses reasonably incident thereto.

14.     The importance of this valid existing right on National Forest lands was

recognized by Congress when it passed the 1897 Forest Service Organic Act, which provides,

*inter alia*, that:

> Nor shall anything [in the Organic Act] prohibit any person from entering upon
> such national forests for all proper and lawful purposes, including that of
> prospecting, locating, and developing the mineral resources thereof:  Provided,
> That such person comply with the rules and regulations covering such national
> forests.

16 U.S.C. § 478.

15.     The General Mining law also provides that a citizen who "discovers" a valuable

deposit and satisfies the required procedures for establishing "location" becomes the owner of an

unpatented mining claim.  30 U.S.C. § 23 ("[N]o location of a mining claim shall be made until

4

the *discovery* of the vein or lode within the limits of the claim located." (emphasis added)); *Best v. Humboldt Placer Mining Co*., 371 U.S. 334, 336 (1963) (an unpatented mining claim is "valid against the United States if there has been a *discovery of mineral* within the limits of the claim" (emphasis added)).

16.     Importantly, an unpatented mining claim:

> [I]s property in the fullest sense of that term; and may be sold, transferred, mortgaged, and inherited without infringing any right or title of the United States. The right of the owner is taxable by the state; and is real property, subject to the lien of a judgment recovered against the owner in a state or territorial court. The owner is not required to purchase the claim or secure patent from the United States; but, so long as he complies with the provisions of the mining laws, his possessory right, for all practical purposes of ownership, is as good as though secured by patent.

*Wilbur v. U.S. ex rel. Krushnic*, 280 U.S. 306, 316-17 (1930).

17.     As originally enacted, the General Mining Law granted owners of unpatented mining claims the right to exclusive possession and use of the claim for mining purposes and the concomitant right to extract the minerals therefrom:

> The locators of all mining locations . . . *shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations*, and of all veins, lodes, and ledges throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes, or ledges may so far depart from a perpendicular in their course downward as to extend outside the vertical side lines of such surface locations.

30 U.S.C. § 26 (emphasis added).

18.     This exclusive right of possession and use allows the owner of an unpatented mining claim to exclude all others, even the federal government:

> [The General Mining Law] gives to the owner of a valid lode location the exclusive right of possession and enjoyment of all the surface included within the lines of the location. *That exclusive right of possession forbids any trespass*. No one, without his consent, or, at least, his acquiescence, can rightfully enter upon the premises or disturb its surface by sinking shafts or otherwise. It was the judgment of Congress that, in order to secure the fullest working of the mine, and

the complete development of the mineral property, the owner thereof should have the undisturbed possession of not less than a specified amount of surface. That exclusive right of possession is as much the property of the locator as the vein or lode by him discovered and located.

*Clipper Mining Co. v. Eli Mining & Land Co*., 194 U.S. 220, 226 (1904) (emphasis added); *U.S. v. Shumway*, 199 F.3d 1093, 1106–07 (9th Cir. 1999) (Forest Service lacks authority "to encroach on legitimate uses of" unpatented mining claims) (citing *United States v. Weiss*, 642 F.2d 296, 299 (9th Cir. 1981)).

19.    In 1955, Congress passed the Surface Resources Act, which provides, *inter alia*;

Rights under any mining claim hereafter located under the mining laws of the United States shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof (except mineral deposits subject to location under the mining laws of the United States). Any such mining claim shall also be subject, prior to issuance of patent therefor, to the right of the United States, its permittees, and licensees, to use so much of the surface thereof as may be necessary for such purposes or for access to adjacent land: *Provided, however*, That any use of the surface of any such mining claim by the United States, its permittees or licensees, shall be such as not to endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto.

30 U.S.C. § 612 (emphasis in original).

20.    The language of the Surface Resources Act was crafted to provide for some multiple uses of the surface of unpatented mining claims. It was not intended, however, that these uses would "interfere with the historical relationship between the possessor of a mining claim and the United States." *United States v. Curtis-Nevada Mines, Inc.*, 611 F.2d 1277, 1280-81 (9th Cir. 1980). Indeed:

This language, carefully developed, emphasizes the [Committee on Interior and Insular Affairs'] insistence that this legislation not have the effect of modifying long-standing essential rights springing from location of a mining claim. Dominant and primary use of the locations hereafter made, as in the past, would be vested first in the locator; the United States would be authorized to manage and dispose of surface resources, or to use the surface for access to adjacent lands, so

long as and to the extent that these activities do not endanger or materially interfere with mining, or related operations or activities on the mining claim.

H.R. Rep. No. 84-730, at 10 (1955), *reprinted in* 1955 U.S.C.C.A.N 2474, 2483.

21.     It was in this legal context that Amos V. Burnside, in or around 1975, properly located, based upon a discovery of a valuable mineral deposit, three mining claims in the Black Hills National Forest in Custer County, South Dakota, Section 26, Township 3 South, Range 3 East.  These claims are commonly referred to as D&R #1, D&R #2, and D&R #3.  The Bureau of Land Management ("BLM") assigned the serial numbers MMC 2542, MMC 2543, and MMC 2544 to D&R #1, D&R #2, and D&R #3, respectively.

22.     Since their location, D&R #1, D&R #2, and D&R #3 have been properly maintained and developed, pursuant to federal statutes and regulations.

23.     For example, a 90-foot-deep vertical shaft was developed on D&R #2 that intersected a substantial quartz vein.  At the bottom of this shaft, along the quartz vein, a 5-foot by 7-foot horizontal drift was excavated for a length of 110 feet.

24.     In addition, two significant trenches, the largest of which is approximately 200 feet long and 8 feet deep, were excavated on D&R #2 to expose near-surface veins.

25.     On D&R #3, a 7-foot by 9-foot tunnel spanning 180 feet was excavated.  This tunnel is approximately 1,200 feet south of and 200 feet lower in elevation than the collar of the shaft on D&R #2.

26.     By quit claim deed, executed and recorded on August 8, 2000, Mr. Burnside's personal representative conveyed D&R #1, D&R #2, and D&R #3 to the Marstons.

27.     Since acquiring the claims, the Marstons have properly maintained the claims in accordance with all applicable laws and regulations.  As a result, the BLM recognizes the Marstons as the owners of the claims.

## FOREST SERVICE ACTIONS REGARDING THE MINING CLAIMS

28.     On or about May 10, 2005, Mr. Marston received a letter dated May 9, 2005, from Michael Lloyd, then-District Ranger of the Hell Canyon Ranger District, Black Hills National Forest, characterizing the Marstons' mining claims as "abandoned" and stating that the Forest Service was "contemplating installation" of a bat gate on the D&R #3 tunnel and "contemplating constructing" a purported "safety closure" on the D&R #2 shaft.  The letter requested that Mr. Marston speak to Mark Nelson, purported district mineral specialist, regarding these proposed actions, and provided a phone number at which Mr. Nelson purportedly could be reached.

29.     At approximately 8:00 a.m., on the day immediately following his receipt of the May 9, 2005, letter, Mr. Marston called the phone number provided therein.  Mr. Marston was informed that Mr. Nelson had not yet arrived at work and, thus, was unavailable to speak with Mr. Marston.

30.     Twenty minutes later, at approximately 8:20 a.m., Mr. Marston called again, in another attempt to reach Mr. Nelson.  Forest Service employee Laura Burns answered Mr. Marston's telephone call.

31.     During this telephone call, Mr. Marston advised Ms. Burns that D&R #1, D&R #2, and D&R #3 were not abandoned, that they were being properly maintained, and that he and Mrs. Marston spent a substantial portion of time each summer working on the claims. Mr. Marston also vehemently objected to the Forest Service's plans to install a bat gate on the D&R #3 tunnel and a purported "safety closure" on the D&R #2 shaft.

32.     During this telephone call, Ms. Burns expressed her appreciation for Mr. Marston's call and agreed that the D&R mining claims were, in fact, active, and not abandoned.  Ms. Burns assured Mr. Marston that installation of a bat gate on the D&R #3 tunnel and a purported "safety closure" on the D&R #2 shaft would not occur.

33.   Despite Ms. Burns' assurances, on or about August 4, 2005, then-District Ranger Michael Lloyd, an employee of the Forest Service acting within the scope of his employment, purportedly issued a "Decision Memo" in which he decided to have bat gates installed on the D&R #3 tunnel and the D&R #2 shaft.

34.   The Marstons never received a copy of this Decision Memo, nor were they informed of its contents, until after the Forest Service destroyed the workings on the D&R claims.

35.   When the Marstons returned to the D&R claims in the summer of 2006, the claims appeared to be in the same physical condition as when the Marstons last visited the claims in 2005.  This physical observation confirmed the assurances that Ms. Burns had made to Mr. Marston on or about May 11, 2005.

36.   In or around August 2006, after spending a substantial portion of the summer working on the mines, the Marstons left the D&R claims for the season.

37.   In or around August 2006, in total disregard for the Marstons' valuable property rights, and without the Marstons' knowledge or consent, a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, bulldozed the trenches and shaft on D&R #2, rendering the drift on D&R #2 inaccessible.  Due to these actions, the trenches, shaft, and drift on D&R #2 were effectively destroyed.

38.   Moreover, in or around October 2006, in total disregard for the Marstons' valuable property rights, and without the Marstons' knowledge or consent, a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees)

9

of the Forest Service, acting at all times within the scope of his/her/their employment or agency, installed a bat gate over the entrance to the tunnel on D&R #3.

39.     The bat gate is not large enough for a person to enter the tunnel and conduct mining activities therein.  As a result, the bat gate materially interferes with the Marstons' ability to conduct mining activities on D&R #3.

40.     The Marstons did not discover the destruction of their workings on D&R #2 and D&R #3 until they returned to the claims in or around May of 2007.

41.     Because of the rights granted to owners of unpatented mining claims under the General Mining Law and the Surface Resources Act, Forest Service employees could not, as a matter of discretion and without the Marstons' consent, destroy the Marstons' mine workings on D&R #2 and D&R #3 nor authorize that destruction.

42.     The Marstons did not consent to the destruction of the trenches, shaft, or drift on D&R # 2 or the installation of a bat gate on D&R #3.

43.     These actions caused actual damage to the Marstons' property for which the Marstons seek monetary damages.

44.     The Marstons have satisfied all the conditions precedent for bringing the following claims.

45.     None of the exceptions in 28 U.S.C. § 2680 applies to the Forest Service's above-described actions.

### FIRST CLAIM FOR RELIEF
**(Federal Tort Claims Act)**
**(Trespass)**

46.     The Marstons hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

10

47.     Under South Dakota law, a trespass occurs when one, intentionally and without
consent or privilege:  (a) enters the land of another or causes a thing or third person to enter the
land of another; (b) remains on the land of another; or (c) fails to remove a thing that he is under
a duty to remove.  *Benson v. South Dakota*, 2006 SD 8, ¶ 74, 710 N.W.2d 131 (2006) (citing
*South Dakota v. Rumpca*, 2002 SD 124 ¶ 10 n.2, 652 N.W.2d 795 (2002)); *Restatement (Second)
of Torts* § 158 (1965).

48.     Even if a person has consent or a privilege to enter the land of another, he is liable
for unreasonable and tortious acts that exceed the scope of his consent or privilege.  *See
Wallahan v. Black Hills Elec. Co-op, Inc.*, 523 N.W.2d 417, 421-23 (S.D. 1994); *Restatement
(Second) of Torts* § 214 (1965); *Restatement (Second) of Torts* § 892A(4) (1979).

49.     Under South Dakota law, the proper remedy for such a trespass is the reasonable
cost of restoration.  *Denke v. Mamola*, 437 N.W.2d 205, 208 (S.D. 1989).

50.     In or around August 2006, a Forest Service employee (or employees) and/or
persons specifically authorized by an employee (or employees) of the Forest Service, acting at all
times within the scope of his/her/their employment or agency, intentionally, and without
permission, entered the Marstons' property and destroyed the trenches and the shaft on D&R #2,
which rendered the drift inaccessible and effectively destroyed.

51.     The destruction of the trenches, shaft, and drift materially interferes with the
Marstons' ability to engage in valuable mining operations on D&R #2.  Indeed, in their current
state, the trenches, shaft, and  drift can no longer be used.

52.     Even if an employee (or employees) and/or specifically authorized agent (or
agents) of the Forest Service had the right to enter upon the surface of D&R #2 to manage

11

surface resources, these employee(s) and/or agent(s) of the Forest Service did not have the right to destroy the valuable mine workings on that claim.

53.     Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the valuable mine workings on D&R #2, the United States, if it were a private person, would be liable for trespass in accordance with the laws of the State of South Dakota.  Thus. the United States is liable for monetary damages in the amount that it would cost to restore the trenches, shaft, and drift on D&R #2 to their previous conditions.

54.     Additionally, in or around October 2006, an employee (or employee) and/or specifically authorized agent (or agents) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, entered the Marstons' property and installed a bat gate at the entrance to the tunnel on D&R #3.

55.     Even if an employee (or employees) and/or agent (or agents) of the Forest Service had the right to enter upon the surface of D&R #3 to manage surface resources, he/she/they did not have the right to install a bat gate at the entrance to the tunnel on D&R #3.

56.     Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, installed  a bat gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person, would be liable for trespass in accordance with the laws of the State of South Dakota.  Thus the United States is liable for monetary damages in the amount that it would cost to restore the tunnel on D&R #3 to its previous condition.

## SECOND CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Negligence Per Se for Violation of South Dakota Trespass Statute)

57.     The Marstons hereby reallege and incorporate the allegations in the preceding

paragraphs as if fully set forth herein.

58.     In South Dakota, the standard for negligence per se is as follows:

The violation of a statute or ordinance, designed for the benefit of individuals, is
of itself sufficient to prove such a breach of duty as will sustain an action for
negligence brought by a person within the protected class if other elements of
negligence concur.  The statute or ordinance becomes the standard of care or the
rule of the ordinarily careful and prudent person.

*Hendrix v. Schulte*, 2007 SD 73, ¶ 17, 736 N.W.2d 845 (2007).

59.     Pursuant to South Dakota statute,

Any person who, knowing that he or she is not privileged to do so, enters or
remains in any place where notice against trespass is given by:  (1) Actual
communication to the person who subsequently commits the trespass; [or] (2)
Posting in a manner reasonably likely to come to the attention of trespassers . . . is
guilty of a Class 2 misdemeanor.

SDCL § 22-35-6.

60.     SDCL § 22-35-6 was intended to protect private property owners, such as the

Marstons.

61.     Prior to the destruction of the trenches, shaft, and drift, and the installation of the

bat gate, the Marstons verbally communicated by telephone to the Forest Service that D&R #2

and D&R #3 were active claims and were not to be disturbed.  Thus, there was "actual

communication" of the notice against trespass.

62.     In addition, prior to the destruction of trenches, shaft, and drift, and the

installation of the bat gate, the Marstons posted notices that were plain and obvious to potential

trespassers on a rock at the entrance to the tunnel on D&R #3 and on a tree on D&R #2 stating

that the claims were active and were not to be disturbed.

63.     A Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, violated SDCL § 22-35-6 when he/she/they entered the Marstons' property and directly and proximately caused the destruction of the trenches, shaft, and drift on D&R #2 and the installation of the bat gate on D&R #3.

64.     Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the trenches, shaft, and drift, on D&R #2 and installed  the bat gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person, would be liable for negligence per se in accordance with the laws of the State of South Dakota.  Thus, the United States is liable for monetary damages in the amount that it would cost to restore the trenches, shaft, and drift on D&R #2 and the tunnel on D&R #3 to their previous conditions.

### THIRD CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Private Nuisance)

65.     The Marstons hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

66.     In South Dakota, a "claim for nuisance may be brought under statutory or common law nuisance theories."  *Atkinson v. City of Pierre*, 2005 SD 114, ¶ 12, 706 N.W.2d 791 (2005) (internal citations omitted).

67.     Under South Dakota statute, a private nuisance is defined as an unlawful act, not committed against the public at large, that "[i]n any way renders other persons insecure in . . . the use of property."  SDCL §§ 21-10-1, 21-10-3.

68.     Under South Dakota common law:

14

> [O]ne is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either (a) intentional and unreasonable, or (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*Atkinson*, 2005 SD 114, ¶ 13, 706 N.W.2d 791 (quoting *Restatement (Second) of Torts* § 822 (1979)).

69. By destroying the trenches, shaft, and drift on D&R #2 and by installing the bat gate on D&R #3, an employee (or employees) and/or specifically authorized agent (or agents) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally and unreasonably:  (a) rendered the Marstons insecure in the use of their property; and (b) invaded the Marstons' interest in the private use and enjoyment of their property.

70. Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission destroyed the trenches, shaft, and drift on D&R #2  and installed  the bat gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person, would be liable for private nuisance in accordance with the laws of the State of South Dakota.  Thus, the United States is liable for monetary damages in the amount that it would cost to restore the trenches, shaft, and drift on D&R #2 and the tunnel on D&R #3 to their previous conditions.

## FOURTH CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Negligence Per Se for Violation of South Dakota Nuisance Statutes)

71. The Marstons hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

72.     South Dakota private nuisance laws, SDCL §§ 21-10-1, 21-10-3, are intended to protect private property owners such as the Marstons.

73.     A Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, violated South Dakota's private nuisance laws , SDCL §§ 21-10-1, 21-10-3, when he/she/they directly and proximately caused the destruction of the trenches and the shaft and drift on D&R #2 and the installation of the bat gate on D&R #3.

74.     Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the trenches, shaft, and drift on D&R #2, and installed the bat gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person, would be liable for negligence per se in accordance with the laws of the State of South Dakota.  Thus, the United States is liable for monetary damages in the amount that it would cost to restore the trenches, shaft, and drift on D&R #2 and the tunnel on D&R #3 to their previous conditions.

## FIFTH CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Negligence Per Se for Violation of the General Mining Law and Surface Resources Act)

75.     The Marstons hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

76.     The General Mining Law grants the Marstons' the right to enter upon federal lands open to mineral entry for the purposes of mineral prospecting, exploration, development, extraction, processing, and other uses reasonably incident thereto.

77.     Pursuant to the Surface Resources Act, "any use of the surface of any . . . mining claim by the United States, its permittees or licensees, shall be such as not to endanger or

16

materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto." 30 U.S.C. § 612. This statute, by its very terms, is intended to protect people, such as the Marstons who own unpatented mining claims.

78.     Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the trenches, shaft, and drift on D&R #2 and installed the bat gate on the entrance to the tunnel on D&R #3, the Forest Service has: (a) denied the Marstons the rights granted to them under the General Mining Law and/or (b) endangered and/or materially interfered with the Marstons' prospecting, mining, or processing operations or uses reasonably incident thereto, in violation of 30 U.S.C. § 612.

79.     The willful and unexcused violations of the General Mining Law and the Surface Resources Act by a Forest Service employee (or employees) or specifically authorized agent (or agents) of the Forest Service, acting within the scope of his/her/their employment or agency, directly and proximately caused the damages to the Marstons' claims.

80.     Because a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the trenches, shaft, and drift on D&R #2 and installed the bat gate on the entrance to the tunnel on D&R #3, the United States, if it were a private person, would be liable for negligence per se in accordance with the laws of the State of South Dakota. Thus, the United States is liable for monetary damages in the amount that it would cost to restore the trenches, shaft, and drift on D&R #2 and the tunnel on D&R #3 to their previous conditions.

## SIXTH CLAIM FOR RELIEF
### (Federal Tort Claims Act)
### (Negligence)

81.     The Marstons hereby reallege and incorporate the allegations in the preceding

paragraphs as if fully set forth herein.

82.     "Negligence is the breach of a duty owed to another, the proximate cause of

which results in an injury." *Zarecky v. Thompson*, 2001 SD 121, ¶ 17, 634 N.W.2d 311 (2001).

For proximate cause to exist, "the harm suffered must be found to be a foreseeable consequence

of the act complained of." *Id.* (citing *Williams v. United States*, 450 F. Supp. 1040, 1046

(D.S.D. 1978) (other internal citations and quotations omitted)).

83.     Pursuant to SDCL §§ 21-10-1, 21-10-3, and 22-35-6, 30 U.S.C. § 612, South

Dakota common law, the General Mining Law and the Surface Resources Act, Forest Service

employees had a duty not to materially interfere with, damage, or destroy the Marstons' mining

claims.

84.     This duty was breached when an employee (or employees) and/or specifically

authorized agent (or agents) of the Forest Service, acting at all times within the scope of

his/her/their employment or agency, directly and proximately destroyed the trenches, shaft, and

drift on D&R #2 and erected the bat gate on D&R #3.

85.     Because a Forest Service employee (or employees) and/or persons specifically

authorized by an employee (or employees) of the Forest Service, acting at all times within the

scope of his/her/their employment or agency, intentionally, and without permission, destroyed

the trenches, shaft, and drift on D&R #2 and installed  the bat gate on the entrance to the tunnel

on D&R #3, the United States, if it were a private person, would be liable for negligence in

accordance with the laws of the State of South Dakota.  Thus, the United States is liable for

monetary damages in the amount that it would cost to restore the trenches, shaft, and drift on D&R #2 and the tunnel on D&R #3 to their previous conditions.

**SEVENTH CLAIM FOR RELIEF**
**(Declaratory and Injunctive Relief)**
**(Violation of the General Mining Law**
**and the Surface Resources Act and Continuing Trespass)**

86.     The Marstons hereby reallege and incorporate the allegations in the preceding paragraphs as if fully set forth herein.

87.     The APA provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.

5 U.S.C. § 702.

88.     The Agency Defendants caused the destruction of the trenches, shaft, and drift on D&R #2 and caused the bat gate to be installed on the entrance to the tunnel on D&R #3.  These actions were agency actions under the APA.

89.     The Marstons have suffered a legal wrong and/or have been adversely affected and/or aggrieved by these agency actions.

90.     These agency actions denied the Marstons the right to enter upon federal lands open to mineral entry for the purposes of mineral prospecting, exploration, development, extraction, processing, and other uses reasonably incident thereto in violation of the General Mining Law.  30 U.S.C. § 22.

19

91.     These agency actions endangered and/or materially interfered with the Marstons' prospecting, mining, or processing operations or uses reasonably incident thereto, in violation of the Surface Resources Act.  30 U.S.C. § 612.

92.     These agency actions result in a continuing trespass because of the continued presence of the fill material and the bat gate on the Marstons' property.  *Restatement (Second) of Torts* §§ 160, 161 (1965).  As a result, Agency Defendants have a non-discretionary, ministerial duty to the Marstons remove the trespassing fill material and bat gate.  *Id*

93.     The Marstons are entitled to a declaration that these agency actions violated the General Mining Law and the Surface Resources Act.  5 U.S.C § 706(2); 28 U.S.C. § 2201.

94.     The Marstons are entitled to a declaration that these agency actions result in a continuing trespass, and, as a result, Agency Defendants have a non-discretionary, ministerial duty to the Marstons to remove the trespassing fill material and bat gate.  5 U.S.C § 706(2); 28 U.S.C. § 2201.

95.     The Marstons are entitled to injunctive relief against Agency Defendants compelling them to restore the trenches, shaft, and drift on D&R #2 and the tunnel on D&R #3 to their previous condition.  28 U.S.C. § 2202.

96.     The Marstons are entitled to mandamus-type relief compelling Agency Defendants to remove the trespassing fill material and bat gate on the Marstons' property.  5 U.S.C. § 706(1); 28 U.S.C. § 1361.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Arron Marston and Judy Marston request the following relief:

1.     With regard to Defendant United States:

(a)     That this Court declare that a Forest Service employee (or employees) and/or persons specifically authorized by an employee (or

20

employees) of the Forest Service, acting at all times within the scope of his/her/their employment or agency, intentionally, and without permission, destroyed the valuable mine workings on D&R #2 and D&R #3.

(b)     That this Court declare that United States is liable under the Federal Torts Claims Act for the destruction of the Marston's valuable mine working on D&R #2 and D&R #3.

(c)     That this Court award the Marstons monetary damages in the amount of $400,185.46 for the destruction of the valuable mine working on D&R #2 and D&R #3; and

(d)     That this Court grant the Marstons further necessary or proper relief in accordance with law, including 28 U.S.C. §§ 2201 and 2202.

2.     In the alternative, with regard to Agency Defendants Vilsack, Tidwell, Bobzien and Kolund:

(a)     That this Court declare that the destruction of the trenches, shaft, and drift on D&R #2, and the installation of a bat gate at the entrance to the tunnel on D&R #3 violated the General Mining Law.

(b)     That this Court declare that the destruction of the trenches, shaft, and drift on D&R #2, and the installation of a bat gate at the entrance to the tunnel on D&R #3 violated the Surface Resources Act.

(c)     That this Court declare that the destruction of the trenches, shaft, and drift on D&R #2, and the placement of a bat gate at the entrance to the tunnel on D&R #3 results in a continuing trespass, and that Agency

Defendants have a non-discretionary, ministerial duty to the Marstons to remove the trespassing fill material and bat gate.

(d)     That this Court order Agency Defendants to restore the trenches, shaft, and drift on D&R #2, and the tunnel on D&R #3 to their previous condition to rectify the damage caused by Agency Defendants' violation of the General Mining Law.

(e)     That this Court order Agency Defendants to restore the trenches, shaft, and drift on D&R #2, and the tunnel on D&R #3 to their previous condition to rectify the damage caused by Agency Defendants' violation of the Surface Resources Act.

(f)     That this Court order Agency Defendants to fulfill their non-discretionary, ministerial duty to the Marstons by removing the trespassing fill material on D&R #2 and bat gate on D&R #3.

(g)     That this Court grant the Marstons further necessary or proper relief in accordance with law.

3.     That this Court award the Marstons their costs, expenses, and attorneys' fees in accordance with law, including the Equal Access to Justice Act, 28 U.S.C. § 2412.

4.     That this Court award the Marstons such further relief as is just and equitable.

DATED this 6th day of January, 2010.

Respectfully Submitted by:

/s/ Max S. Main
Max S. Main, Esq., S.D. Bar No. 1084
BENNETT, MAIN AND GUBBRUD, P.C.
618 State Street
Belle Fourche, South Dakota 57717
Phone: (605) 892-2011

22

Fax: (605) 892-4084
max@bellelaw.com

Joel M. Spector, Esq., *admitted pro hac vice*
MOUNTAIN STATES LEGAL FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
Phone: (303) 292-2021
Fax: (303) 292-1980
jspector@mountainstateslegal.com

Attorneys for Plaintiffs Arron Marston and Judy Marston

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of January, 2010, I filed the Plaintiffs' FIRST AMENDED COMPLAINT electronically through the CM/ECF system, which caused the following to be served by electronic means upon:

STEPHANIE C. BENGFORD
Assistant United States Attorney
P. O. Box 2638
Sioux Falls, SD 57101-2638
stephanie.bengford@usdoj.gov

/s/ Max S. Main
Max S. Main, Esq., S.D. Bar No. 1084
BENNETT, MAIN AND GUBBRUD, P.C.
618 State Street
Belle Fourche, South Dakota 57717
Phone: (605) 892-2011
Fax: (605) 892-4084
max@bellelaw.com

Attorney for Plaintiffs